506 P.2d 463

**Charles O. DUNN and Greta H. Dunn, husband and wife, Plaintiffs-Appellants,**

v.

**J. LaTharr BAUGH and Patricia Baugh, husband and wife, Defendants-Respondents.**

No. 11037.

Supreme Court of Idaho.

Feb. 13, 1973.

Ronald G. Carter, Boise, for plaintiffs-appellants.

Bruce O. Robinson, Kenneth F. White, Nampa, for defendants-respondents.

SHEPARD, Justice.

This is an action for dissolution of a partnership and an accounting. The matter arose out of a complex series of transactions between the parties concerning the operation of four farms in Gooding County. Following trial, the district court found that there had been an informal partnership agreement between the parties under the terms of which they would contribute equally to the farming business. The court ordered the sale of one of the farms which was the sole remaining partnership asset, and further ordered that the proceeds first be applied to the liquidation of outstanding partnership debts and the remaining sum be divided equally between the parties. We affirm.

The relationship between plaintiffs-appellants Dunn and defendants-respondents Baugh arose in 1964 when Baugh executed

a purchase agreement to buy the "Porter" and "Hagerman" farms from Dunn. Baugh worked both of those farms during the 1965 crop year but was unable to make the payments called for by the purchase agreement. The parties thereafter cancelled the purchase agreement by mutual agreement in early 1966. Thereafter in a separate transaction Dunn exchanged the "Hagerman" farm for the "Matthews" farm.

After the parties had agreed to a dissolution of the 1964 purchase agreement they decided to purchase the "Johnson" farm in early 1966. The parties had the following understanding at the beginning of the 1966 crop season pertaining to the operation of three farms. Baugh was to work the "Porter" and "Matthews" farms and Baugh and Dunn were to share equally in any profits realized from the sale of crops off those farms. As to the operation of the Johnson farm Dunn agreed to supply the land and Baugh agreed to supply the labor and machinery. Baugh was to use farm income to pay the operating expenses *as well as the purchase price.* The parties planned to share equally in any profits realized therefrom.

Baugh farmed the Porter, Matthews and Johnson farms during the 1966 crop season. In order to operate these farms, Baugh borrowed cash from the Bank of Idaho on promissory notes, two of which were guaranteed by Dunn. At the end of the 1966 crop season, Dunn sold both the Porter and Matthews farms. Baugh continued to work the Johnson farm during the 1967 season under the general oral partnership agreement. During 1967 Dunn refused to supply Baugh with any financial backing to facilitate Baugh's obtaining loans for operating capital. Baugh was unable to make the contract payments on the Johnson farm during 1967.

Dunn brought this action in October 1968 seeking to dissolve the partnership and requesting payment of Dunn's share of the partnership proceeds. All of the partnership assets were liquidated with the ex-ception of the Johnson farm. The proceeds of liquidation were applied to debts incurred during the partnership operation but there remained some $5,936.92 in unsatisfied partnership debts. Dunn and Baugh had met on occasion to discuss their farming operations and to plan the obtaining of credit at the Bank of Idaho for operating expenses, but never during the entire pendency of their business relationship did the parties enter into any formal partnership agreement, nor did they ever file a partnership tax return.

Dunn first asserts that the trial court erred in failing to hold Baugh liable on the purchase agreement pertaining to the Porter and Hagerman farms. At trial the following colloquy took place between Dunn and the court concerning the purchase agreement on the Porter and Hagerman farms:

THE COURT: But in the complaint you are asking him to now pay you these [purchase payments] as part of the settlement. Now, weren't those stricken as far as any obligation between you and Baugh were concerned at the time you closed out that sale agreement?

DUNN: Yes. Yes, they were.

THE COURT: There was an agreement actually between you and Baugh. You said we can't work this out, and we will make a new deal; isn't this about right?

DUNN: Yes.

By his own admission at trial, Dunn indicated that the purchase agreement on the Porter and Hagerman farms had been terminated by mutual agreement and this demonstrates the lack of foundation for Dunn's first assignment of error.

Dunn next asserts that the trial court erred in failing to hold that Baugh had breached a fiduciary obligation to Dunn. At no point during the three years between commencement of the action and the entry of judgment did Dunn ever raise the issue of fiduciary obligation. This issue was not included in the pretrial order

which was approved by counsel for both parties. Issues not presented to the trial court will not be considered on appeal. Williams v. Havens, 92 Idaho 439, 444 P.2d 132 (1968); Fraiser v. Carter, 92 Idaho 79, 437 P.2d 32 (1968); Swaringen v. Swanstrom, 67 Idaho 245, 175 P.2d 692 (1946).

Dunn's remaining assignments of error may be reduced to the assertion that Baugh reaped a profit during the partnership operation and that the trial court erred both in failing to recognize the profit and in failing to make Baugh account to Dunn for the alleged profit. Dunn argues that the amended accounting which Baugh submitted to the trial court proves that during the years 1966, 1967 and 1968 Baugh made a total profit on the partnership farming operations of $6,703.90. Dunn also asserts that Baugh somehow had the benefit of $5,936.92 in unpaid partnership debts. Dunn asserts that Baugh misappropriated both of said sums of money and concludes therefrom that Baugh must account to him for a total of $12,640.-82.

We deal first with Dunn's assertion that Baugh somehow profited from the $5,936.92 in unpaid debts. We note that the trial court found that such debts were debts of the partnership. We have examined the record at length and find the trial court's finding supported by substantial competent evidence.

Findings of fact by the trial court will not be set aside unless they are clearly erroneous and will be sustained on appeal if they are supported by substantial although conflicting evidence. I.R.C.P. 52(a); Johnson v. Sweeney, 91 Idaho 805, 430 P.2d 883 (1967); Ivie v. Peck, 94 Idaho 625, 495 P.2d 1110 (1972); Jones v. Big Lost River Irrigation Dist., 93 Idaho 227, 459 P.2d 1009 (1969).

We find no authority, and appellant fails to cite any for the somewhat bizzare proposition that a partner managing a partnership business must account to his fellow partner for all partnership debts when the income from the partnership business is insufficient to pay those debts.

We now turn to Dunn's assertion that the district court erred in failing to recognize and find an alleged $6,703.90 profit and in failing to hold Baugh accountable for that profit. Baugh, as the party called upon to render an accounting, had both the burden of producing evidence and the burden of persuasion. Baugh met his burden of producing evidence when he entered his accounting and his amended accounting, both of which were admitted in evidence at the trial by stipulation of counsel. Dunn never challenged the accuracy of the figures so presented by Baugh. Baugh's amended accounting purports to show a paper profit of $6,703.90 on the partnership farming operation for the years in question. Baugh also testified that he had obtained loans to cover operating expenses of the partnership farming operation from the Bank of Idaho. Baugh testified without refutation that the paper profit of $6,703.90 was used to pay off the said notes obtained from the Bank of Idaho.

This court stated in Pierstorff v. Gray's Auto Shop, 58 Idaho 438, 447, 74 P.2d 171, 175 (1937):

> "The rule applicable to all witnesses, whether parties or interested in the event of an action, is, that either a board, court, or jury must accept as true the positive, uncontradicted testimony of a credible witness, unless his testimony is inherently improbable, or rendered so by facts and circumstances disclosed at the hearing or trial."

Since Baugh's testimony stands uncontradicted we find that he met his burden of persuasion by presenting the court with evidence that any profits reaped from the partnership business were applied to the payment of partnership obligations at the Bank of Idaho. On the other hand, since Baugh's statements were not controverted we find that Dunn failed to sustain his burden of persuading the court that Baugh had misappropriated the alleged

profits. Clearly the payment of partnership debts does not constitute a misappropriation of partnership funds. The district court did not err by failing to require Baugh to pay $6,703.90 to Dunn.

The judgment of the district court is affirmed. Costs to respondents.

DONALDSON, C. J., McQUADE and McFADDEN, JJ., and QUINLAN, District Judge, concur.